**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **SALVADOR ALONSO-RIVERO,** <br><br> ***Petitioner*,** <br> **v.** <br><br> **MARY DE ANDA YBARRA;** <br> **TODD BLANCHE;** <br> **DAVID J. VENTURELLA;** <br> **MICHAEL WATKINS; and** <br> **MARKWAYNE MULLIN,**[1] <br><br> ***Respondents*.** | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | **EP-26-CV-00651-DCG** |

**<u>ORDER GRANTING PETITION</u>**

Petitioner Salvador Alonso-Rivero ("Petitioner") challenges his immigration detention while the Government facilitates his removal from the United States.[2] Among other things, Petitioner argues that the amount of time he's spent in detention—coupled with uncertainty regarding when (or whether) he'll be removed from the country—requires his release.[3] Respondents, however, insist that Petitioner's continued detention is a product of Petitioner's refusal to comply with removal.[4]

---

[1] The Court assumes that Petitioner sues Respondents in their official capacities.

[2] *See generally* Pet., ECF No. 3.

[3] *See generally id.*; TRO Mot., ECF No. 21.

[4] *See generally* Resp'ts' Resp. TRO Mot., ECF No. 35.

Respondents didn't substantively respond to the Petition in their initial response. *See generally* Resp., ECF No. 14 (arguing that the Court lacked jurisdiction over this case). Respondents instead responded to Petitioner's substantive claims in their response to Petitioner's Motion for Temporary Restraining Order (ECF No. 21). *See generally* Resp'ts' Resp. TRO Mot.

For the following reasons, the Court **GRANTS** the Petition and **ORDERS** Respondents to release Petitioner from custody.

## I. INTRODUCTION

Petitioner is a Cuban citizen.[5] On April 7, 2016, an Immigration Judge ("IJ") ordered Petitioner removed.[6] The Government, however, couldn't remove Petitioner at that time because:

(1) Cuba wouldn't accept Petitioner; and

(2) the United States Government hadn't identified a third country—that is, a country other than Cuba—that would accept Petitioner either.[7]

After determining that "there was no significant likelihood [that Petitioner would be removed] in the foreseeable future," the Government released him under an order of supervision ("OSUP") on June 28, 2016.[8]

Nearly a decade later, on March 16, 2025, the Government revoked Petitioner's OSUP and took him back into custody.[9] On November 17, 2025, the Government served Petitioner with notice of its intent to remove him to Mexico.[10] Thereafter, the Government twice attempted to remove Petitioner to Mexico—first on January 19, 2026, and then on August 19, 2026.[11]

---

[5] *See* TRO Mot. at 1 ("[Petitioner] is a Cuban national . . . ."); Resp'ts' Resp. TRO Mot. at 1 ("Petitioner is a native and citizen of Cuba . . . .").

[6] *See* Removal Order, ECF No. 35-2, at 1.

[7] *See* Resp'ts' Resp. TRO Mot. at 1.

[8] *See id*.

[9] *See id.*

[10] *See id.* at 2.

[11] *See id.*

According to Respondents, Petitioner "refused to comply" on both occasions.[12] As a result, the Government is now "seeking another third country for [Petitioner's] removal," and "[t]he anticipated timeline for [his] removal is unknown."[13]

Ordinarily, post-removal-order detention cases turn on whether an alien's removal is reasonably foreseeable—in which case 8 U.S.C. § 1231(a)(6) authorizes detention.[14] Here, the Government concedes that it doesn't have a timeline for Petitioner's removal,[15] which makes for straightforward determinations that:

(1) removal is not reasonably foreseeable; and (thus)

(2) detention is not authorized by 8 U.S.C. § 1231(a)(6).[16]

The complicating factor in this case is Petitioner's refusal to comply with removal to Mexico. In most instances, 8 U.S.C. § 1231(a)(1)(C) authorizes the Government to detain aliens who fail to comply with removal orders.[17] Petitioner, however, argues that his refusal to comply stems from the Government's failure to allow him "to contest his [removal] designation to Mexico on the basis of fear of persecution or torture."[18] That raises a question: Does 8 U.S.C. §

---

[12] *See id.*

*See also* Notice Failure Comply, ECF No. 35-4, at 1 (asserting that Petitioner "refused to depart as ordered" and "act[ed] to prevent [his] removal").

[13] Resp'ts' Resp. TRO Mot. at 2.

[14] *See, e.g.*, *Khoury v. Garite*, No. EP-25-CV-00577-DCG, 2026 WL 1179822 (W.D. Tex. Apr. 21, 2026).

[15] *See supra* note 13 and accompanying text.

[16] *See infra* Section II.B.2.

[17] *See infra* Section II.B.3.

[18] TRO Mot. at 5.

1231(a)(1)(C) authorize detention where an alien demands procedural protections to which he is entitled?

As the Court will now explain, the answer to that question is "No." Because Petitioner was entitled to the pre-removal protections he sought, 8 U.S.C. § 1231(a)(1)(C) doesn't authorize his detention. And because his removal is not reasonably foreseeable, neither does 8 U.S.C. § 1231(a)(6). The Government must release him.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241, a person in immigration detention can challenge detention as unlawful by filing a petition for a writ of habeas corpus.[19] To prevail, the petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[20]

### B. Relevant Authorities

#### 1. 8 U.S.C. § 1231(a)(6)

8 U.S.C. § 1231(a) governs detention of aliens who are ordered removed from the country.[21] Once a removal order becomes final, Section 1231(a)(1) provides the Government

---

[19] 28 U.S.C. § 2241(c); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (citing 28 U.S.C. § 2241(c)(3)).

[20] *See* 28 U.S.C. § 2241(c); *see also, e.g.*, *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

[21] *Zadvydas*, 533 U.S. at 682.

ninety days to secure removal. This is known as the "removal period," during which detention is mandatory under the statute's plain text.[22]

As this case illustrates, though, not all aliens are removed during the removal period. Once the ninety-day removal period expires, Section 1231(a)(6) authorizes the Government to continue detaining certain aliens, including those who (like Petitioner) are removable under Section 1227(a)(2).[23] Notably, Section 1231(a)(6) doesn't expressly limit how long the Government may detain the specified classes of aliens:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, ***may be detained beyond the removal period*** and, if released, shall be subject to . . . terms of supervision . . . .[24]

### 2. *Zadvydas v. Davis*

That doesn't mean that the Government's Section 1231(a)(6) detention authority is unlimited, though. In *Zadvydas v. Davis*, the Supreme Court considered whether Section 1231(a)(6) gives the Government unfettered discretion to decide whether and how long to continue detention.[25] There, the Government continued detaining two aliens past the removal

---

[22] *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General ***shall*** detain the alien." (emphasis added)); *see also Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order and during the 90–day removal period, however, aliens must be held in custody . . . .").

[23] *See infra* note 24.

*See also* Immigration Record, ECF No. 35-1, at 2 (indicating that the Government charged Petitioner with being removable under "237a2Aii"—*i.e.*, Section 1227(a)(2)(A)(ii)); 8 U.S.C. § 1227(a)(2)(A)(ii) (providing that "[a]ny alien who . . . is convicted of a crime for which a sentence of one year or longer may be imposed[] is deportable").

[24] *See* 8 U.S.C. § 1231(a)(6) (emphasis added).

[25] *Zadvydas*, 533 U.S. 678.

period due to their criminal histories.[26] The Government, however, hadn't been able to find a country willing to accept either of them, which resulted in their prolonged detentions without a foreseeable end in sight.[27]

Although the Supreme Court acknowledged that Section 1231(a)(6) doesn't expressly limit the duration of detention, it nonetheless construed the statute to contain implicit limits.[28] Specifically, the Supreme Court "detected ambiguity in the statutory phrase 'may be detained,'" concluding that "while 'may' suggests discretion, it does not necessarily mean unlimited discretion."[29] The Supreme Court further reasoned that "if Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms."[30]

After determining that Section 1231(a)(6) is ambiguous, the Supreme Court weighed competing interpretations of Section 1231(a)(6)'s detention authority. The Government's interpretation would have authorized indefinite detention[31]—which, according to the Supreme

---

[26] *See id*. at 684–86.

[27] *See id.*

[28] *See id*. at 682.

*Cf. Miller v. French*, 530 U.S. 327, 336 (2000) ("[W]here Congress has made its intent clear, 'we must give effect to that intent.'" (quoting *Sinclair Refin. Co. v. Atkinson,* 370 U.S. 195, 215 (1962))).

[29] *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (citing *Zadvydas*, 533 U.S. at 697).

[30] *Zadvydas*, 533 U.S. at 697.

[31] *Id.* at 692.

Court, would raise a "serious constitutional problem."[32] As the Supreme Court had previously explained, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[33] Applied to Section 1231(a)(6):

> (1) the statute's "basic purpose" is to "assur[e] the alien's presence at the moment of removal"; and
>
> (2) if it's unlikely that the Government will be able to remove an alien within the foreseeable future, detaining that alien under Section 1231(a)(6) wouldn't serve that purpose; so
>
> (3) interpreting Section 1231(a)(6) to authorize the Government to detain aliens whose removals aren't foreseeable would raise serious constitutional questions.[34]

To avoid those constitutional questions, the Supreme Court construed Section 1231(a)(6) to limit detention to a "reasonable time."[35] As for what constitutes a "reasonable time," the Supreme Court determined that detention is "presumptively reasonable" for six months.[36] After that 6–month period, "if the alien 'provides good reason to believe that there is no significant

---

[32] *Id*. at 690.

*See also Jennings*, 583 U.S. at 296 ("When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))).

[33] *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."); *see also Zadvydas*, 533 U.S. at 690 (citing *Jackson*, 406 U.S. at 738).

[34] *Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").

[35] *Id.* at 689.

[36] *Id*. at 701.

likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien."[37]

**3. 8 U.S.C. § 1231(a)(1)(C)**

A final authority to consider for the purposes of this Order is 8 U.S.C. § 1231(a)(1)(C). That provision authorizes post-removal-period detention where an alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."[38]

Some courts have concluded that "*Zadvydas*'s burden-shifting analysis is not necessary in a case where a[n] [alien] acts to thwart his removal by refusing to cooperate."[39] Others have considered an alien's failure to cooperate while conducting *Zadvydas*'s burden-shifting analysis.[40] Either way, though, courts generally agree that "the due process concerns that motivated the Supreme Court in *Zadvydas* do not apply when an alien may have the keys to freedom in his pocket."[41]

---

[37] *Jennings*, 583 U.S. at 296 (quoting *Zadvydas*, 533 U.S. at 701); *see also Zadvydas*, 533 U.S. at 699 ("Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

[38] 8 U.S.C. § 1231(a)(1)(C).

[39] *See, e.g.*, *Castillo Torres v. Tate*, No. CV H-26-0543, 2026 WL 2455365, at *2 (S.D. Tex. Aug. 21, 2026) (quoting *Anadji v. Keisler*, Civil No. B-07-184, 2008 WL 11388565, at *6 (S.D. Tex. June 26, 2008), *report and recommendation adopted*, 2008 WL 11388548 (S.D. Tex. July 15, 2008)).

[40] *See, e.g.*, *Glushchenko v. DHS*, 566 F. Supp. 3d 693, 711 (W.D. Tex. 2021); *Vicente Rodas v. Semaia*, No. 5:26-CV-02027-PD, 2026 WL 2448316, at *4 (C.D. Cal. Aug. 20, 2026).

[41] *See Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003) (citation modified).

### C. Analysis

#### 1. Petitioner has not "acted to prevent his removal" within the meaning of 8 U.S.C. § 1231(a)(1)(C)

For the purposes of this Order, the Court will consider Petitioner's purported failure to comply with removal before undertaking *Zadvydas*'s burden-shifting analysis.[42] Although they don't expressly state it, Respondents seem to argue that Section 1231(a)(1)(C) authorizes Petitioner's continued detention.[43] That's because, according to Respondents, Petitioner's refusal to accept removal to Mexico is the reason he remains in detention.[44]

---

[42] *See supra* note 39 and accompanying text.

*See infra* Section II.C.2.b.

[43] *See, e.g.*, Resp'ts' Resp. TRO Mot. at 7 (citing 8 U.S.C. § 1231(a)(1)(C) as one of three sources of authority that authorizes post-removal-period detention); Notice Failure Comply, ECF No. 35-4, at 1 (stating that Petitioner would "remain in ICE custody" until he complies with his obligations under U.S.C. § 1231(a)(1)(C)).

*But see* Resp'ts' Resp. TRO Mot. at 7 ("Detention Is Lawful Under 8 U.S.C. ***§ 1231(a)(6)***." (emphasis added)).

[44] *See* Resp'ts' Resp. TRO Mot. at 2, 11; Urquidi Decl., ECF No. 35-5, at 2 ("The only reason [Petitioner] has not already been removed i[s] because he failed to comply with [the Government's] removal efforts to Mexico.").

Petitioner argues that his refusal to comply with removal stemmed from the Government's failure to allow him an opportunity to seek withholding of removal (to which he argues he is entitled).[45] This argument assumes that:

(1) Petitioner is entitled to seek withholding of removal before the Government removes him to Mexico; and

(2) seeking withholding of removal is not "acting to prevent his removal" for the purposes of Section 1231(a)(1)(C).

As to the first issue, this Court has previously determined that aliens are entitled to a "meaningful opportunity" to seek withholding of removal before the Government removes them to third countries.[46] Here, the record reflects that the Government hasn't given Petitioner an opportunity to seek withholding of removal to Mexico.[47]

That leaves the issue of whether Petitioner's demand for an opportunity to seek withholding of removal is an "act to prevent his removal" within the meaning of Section 1231(a)(1)(C). Although it doesn't appear that the Fifth Circuit has squarely addressed the

---

[45] *See* TRO Mot. at 4–5.

[46] *See Pablo Pablo v. Venturella*, No. EP-25-CV-00566-DCG, 2026 WL 2078922, at *3–7 (W.D. Tex. July 17, 2026) (Guaderrama, J.).

[47] *See* Resp'ts' Resp. TRO Mot. at 11 (arguing that "there are no procedural requirements" that would allow Petitioner "to challenge his third country removal," and that serving Petitioner with (1) notice of removal; and (2) notice of failure to comply with removal satisfied due process).

issue,[48] the Ninth Circuit has determined that Section 1231(a)(1)(C) does not authorize detention where an alien uses his available legal remedies in good faith:

> [W]e are highly skeptical about the government's suggestion that an alien's attempt to seek judicial relief from deportation constitutes "conspir[ing] or act[ing] to prevent [his] removal." We have previously held that an alien engages in such behavior when he willfully refuses to cooperate with the government in processing his deportation papers. Such acts of obstruction are clearly of a different nature than an alien's attempt to make use of legally available judicial review and remedies.[49]

This Court finds the Ninth Circuit's reasoning persuasive. Section 1231(a)(1)(C) applies where an alien's own noncooperation prevents an otherwise lawful removal.[50] Here, Petitioner has a right to a meaningful opportunity to pursue withholding of removal, and it would be unlawful for the Government to remove him without allowing him to assert that right.[51] The Court concludes that Petitioner's good-faith assertion of that right is not an "act to prevent

---

[48] In *Roach v. Holder*, a Fifth Circuit panel affirmed a district court's determination that Section 1231(a)(1)(C) authorized continued detention where an alien hampered his own removal by "fil[ing] a series of motions to reconsider or reopen his case with the BIA, all of which have been denied." *See* 344 F. App'x 945, 947 (5th Cir. 2009). That opinion is unpublished, so it is not precedential. *See* 5TH CIR. R. 47.5. Even if it was precedential, that case is distinguishable because (at least as far as the record reflects) Petitioner hasn't raised duplicative, meritless claims for relief from removal.

[49] *Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008) (internal citations omitted).

[50] *See, e.g.*, *Glushchenko*, 566 F. Supp. 3d at 709 (determining that Section 1231(a)(1)(C) applied where the only thing preventing an alien's removal was his refusal to sign travel documents); *Castillo Torres*, 2026 WL 2455365, at *2 (similar).

[51] *See supra* notes 46–47 and accompanying text.

*See also, e.g.*, *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for . . . withholding of deportation to the country to which they will be deported violates both [Government] regulations and the constitutional right to due process.").

removal" within the meaning of Section 1231(a)(1)(C).[52] That provision therefore doesn't authorize Petitioner's continued detention.

**2. 8 U.S.C. § 1231(a)(6) doesn't authorize Petitioner's detention**

The Court now turns to the *Zadvydas* analysis, under which the Court will assess whether 8 U.S.C. § 1231 authorizes Petitioner's continued detention.[53]

**a. Petitioner's detention is not presumptively reasonable**

*Zadvydas* first requires the Court to determine whether Petitioner's detention is presumptively reasonable.[54] This Court previously concluded that *Zadvydas*'s six-month, presumptively reasonable detention period runs continuously from the date on which a removal order becomes final—irrespective of whether the alien spends all or some of those six months in detention.[55]

Here, Petitioner's removal order became final on April 7, 2016,[56] meaning that his detention under Section 1231(a)(6) was presumptively reasonable through October 7, 2016.

---

[52] *See, e.g.*, *Prieto-Romero*, 534 F.3d at 1060; *Vicente Rodas*, 2026 WL 2448316, at *4 (determining that Section 1231(a)(1)(C) didn't apply because the alien was "seeking a withholding of removal claim, which he [wa]s legally entitled to do").

[53] *See supra* notes 35–37 and accompanying text.

[54] *See supra* Section II.B.2.

[55] *See Khoury*, 2026 WL 1179822, at *7–8 (concluding that "whether detention is presumptively reasonable must depend on when the removal order becomes final—not how long an alien has spent in detention").

[56] *See* Removal Order at 1 (indicating that (1) Petitioner's removal order was dated April 7, 2016; and (2) Petitioner waived appeal of his removal order).

*See also* 8 C.F.R. § 1241.1 (explaining how "[a]n order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final").

Because that six-month period has long since passed, Petitioner's detention is not presumptively reasonable.

**b. Petitioner's removal is not foreseeable**

Having determined that Petitioner's detention isn't presumptively reasonable, the Court must now consider whether Petitioner's removal is foreseeable. As noted above, Petitioner bears the initial burden of providing good reason to believe that there is ***not*** a significant likelihood of removal in the reasonably foreseeable future.[57] While "'[g]ood reason' is not an onerous standard,"[58] it requires more than just "conclusory statements suggesting that he will not be immediately removed."[59] If Petitioner carries his burden, the burden then shifts to Respondents to rebut Petitioner's showing.[60]

---

[57] *See supra* note 37 and accompanying text.

Some courts have concluded that where (as here) the Government re-detains an alien after revoking the alien's release, 8 C.F.R. § 241.13(i)(2) applies and places the initial burden on ***Respondents*** to show that such a likelihood of removal does exist. *See, e.g.*, *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[U]pon revocation of supervised release, it is the [Government's] burden to show a significant likelihood that the alien may be removed."); *accord Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025).

The Court need not resolve which burden-shifting framework applies to *Zadvydas* claims involving re-detention—even if *Zadvydas*'s burden-shifting framework (*i.e.*, the framework that is less favorable to Petitioner) applied, Petitioner's continued detention is unreasonable and not authorized by Section 1231(a)(6).

[58] *See Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026).

[59] *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006).

[60] *See supra* note 37 and accompanying text.

### *i. Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future*

Petitioner carries his burden. He notes that he was "previously determined to not be on the repatriation list to Cuba," and claims that it is unlikely that "Cuba will grant [him] travel documents."[61] He also notes that, although the Government attempted to remove him to Mexico, he was never screened for withholding of removal to Mexico (as is required where an alien claims fear of persecution or torture).[62]

Petitioner has now been detained for ***over seventeen months***,[63] yet there is no indication that the Government has taken the necessary steps to remove Petitioner to a third country. To secure Petitioner's removal, the Government must (among other things) give Petitioner a chance to present his case for withholding of removal to an IJ.[64] The Government, however, hasn't taken

---

[61] Pet. at 6.

*See generally* Urquidi Decl. (lacking any indication that the Government plans to remove Petitioner to Cuba).

[62] *See* Advisory, ECF No. 33, at 1–2 (suggesting that, as of August 19, 2026, Respondents hadn't given Petitioner an opportunity to seek withholding of removal).

*See also* Order Granting Petition at 10–13, *Zawu Roberts v. De Anda-Ybarra*, No. 3:26-CV-00377 (W.D. Tex. Jun. 29, 2026), ECF No. 22 (Guaderrama, J.) (concluding that removal wasn't reasonably foreseeable where the Government hadn't allowed an alien to seek withholding of removal).

[63] *See* TRO Mot. at 1 (indicating that the Government took Petitioner into custody on March 16, 2025).

[64] *See, e.g.*, *Pablo Pablo*, 2026 WL 2078922, at *3–7.

that step.[65] These circumstances provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.[66]

### *ii. Respondents failed to rebut Petitioner's showing*

Aside from conclusory statements, Respondents offer little to rebut Petitioner's assertion that his removal isn't foreseeable.[67] In fact, their filings indicate that—aside from Mexico (to which the Government hasn't been able to remove Petitioner)—the Government hasn't even identified a third country for Petitioner's removal.[68]

Section 1231(a)(6) doesn't authorize Respondents to detain Petitioner indefinitely while they look for a country that will accept his removal.[69] Under these circumstances, Petitioner's continued detention is unreasonable and no longer authorized by statute.[70]

---

[65] *See supra* Section II.C.1.

[66] *See, e.g.*, *Torres v. Blanche*, No. 2:26-CV-00637-RFB-MDC, 2026 WL 2163550, at *5 (D. Nev. July 27, 2026) (finding that an alien met his burden under *Zadvydas* where the Government hadn't allowed the alien to seek withholding of removal to a designated third country); *Castellano v. DHS*, No. 26-CV-00080-PAB, 2026 WL 472732, at *3 (D. Colo. Feb. 19, 2026) ("Petitioner being entitled to 'notice and an opportunity to seek protection from removal' . . . further supports that his deportation is not likely in the reasonably foreseeable future." (citing cases)).

[67] *See, e.g.*, Resp'ts' Resp. TRO Mot. at 9 ("Petitioner cannot meet the burden to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

[68] *See id.* at 11 (suggesting that the Government is "affirmatively seeking" but has not yet designated a third country for Petitioner's removal).

[69] *See Zadvydas*, 533 U.S. at 689.

[70] *Id.* at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

### D. Scope of Relief

Because Section 1231(a) doesn't authorize Petitioner's continued detention, the Court will order his release.[71] *Zadvydas* counsels that "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances."[72] The Court directs Respondents to release Petitioner under a form of supervised release that is consistent with 8 U.S.C. § 1231(a)(3) and corresponding regulations.[73]

Respondents may continue to facilitate removal while Petitioner is released under supervision. However, Respondents may only re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i).[74]

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner Salvador Alonso-Rivero has shown by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[75]

---

[71] *See id.* (contemplating an alien's release where detention is no longer authorized).

[72] *Id.* at 700.

[73] *See* 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

*See also, e.g.,* 8 C.F.R. § 241.5 ("Conditions of release after removal period"); *id.* § 241.13(h) ("Conditions of release").

[74] *See* 8 C.F.R. § 241.4(*l*) (identifying the process by which the Government may revoke an alien's OSUP where the alien violates their conditions of release); *id.* § 241.13(i)(3) (identifying the process by which the Government may revoke an alien's OSUP to execute removal).

[75] *See supra* note 20 and accompanying text.

The Court therefore **GRANTS** Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 3) **IN PART**.

The Court thereby **ORDERS** Respondents to **RELEASE** Petitioner from immigration detention **UNDER SUPERVISION** **on or before Friday, September 4, 2026**.

The Court **FURTHER ORDERS** that Respondents shall notify the Court of Petitioner's release **by 5:00 PM Mountain Time on Tuesday, September 8, 2026**.

The Court **FURTHER ORDERS** that Respondents may only re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i).

The Court **TAKES NO FURTHER ACTION** in connection with its "Order Temporarily Restraining Respondents from Removing Petitioner" (ECF No. 34), which expired August 26, 2026.

The Court **DENIES** Petitioner's request for attorney's fees under the Equal Access to Justice Act.[76]

Finally, now that Petitioner has obtained the habeas relief to which he is entitled, there appears to be nothing further for the Court to do in this case. The Court therefore **CLOSES** the above-captioned case.

**So ORDERED and SIGNED this 1st day of September 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

[76] *See* Pet. at 7; *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (explaining that the Equal Access to Justice Act's waiver of sovereign immunity doesn't extend to habeas corpus proceedings).